## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

GEORGE ASSAD, Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

DIGITALGLOBE, INC.,
GENERAL HOWELL M. ESTES III,
NICK S. CYPRUS,
ROXANNE DECYK,
LAWRENCE A. HOUGH,
WARREN C. JENSON,
L. ROGER MASON, JR.,
JEFFREY R. TARR,
KIMBERLY TILL,
EDDY ZERVIGON,
MACDONALD, DETTWILER AND ASSOCIATES LTD.,
SSL MDA HOLDINGS, INC., and
MERLIN MERGER SUB, INC.,

      Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

    Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

    1.    This action stems from a proposed transaction announced on February 24, 2017 (the "Proposed Transaction"), pursuant to which DigitalGlobe, Inc. ("DigitalGlobe" or the "Company") will be acquired by MacDonald, Dettwiler and Associates Ltd ("Parent"), SSL

MDA Holdings, Inc. ("SSL MDA"), and Merlin Merger Sub, Inc. ("Merger Sub," and together with Parent and SSL MDA, "MacDonald").

2.      On February 24 2017, DigitalGlobe's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, shareholders of DigitalGlobe will receive $17.50 in cash and 0.3132 of a Parent share for each share of DigitalGlobe stock they own.

3.      On April 27, 2017, defendants filed a Form F-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the

transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of DigitalGlobe common stock.

9.     Defendant DigitalGlobe is a Delaware corporation and maintains its principal executive office at 1300 West 120th Avenue, Westminster, Colorado 80234.  DigitalGlobe's common stock is traded on the NYSE under the ticker symbol "DGI."

10.     Defendant General Howell M. Estes III ("Estes") has served as a director of DigitalGlobe since 2007 and as Chairman of the Board since February 2011.  According to the Company's website, Estes is Chair of the Governance and Nominating Committee.

11.     Defendant Nick S. Cyprus ("Cyprus") has served as a director of DigitalGlobe since June 2009.  According to the Company's website, Cyprus is Chair of the Audit Committee and a member of the Governance and Nominating Committee.

12.     Defendant Roxanne Decyk ("Decyk") has served as a director of DigitalGlobe since July 2014.  According to the Company's website, Decyk is Chair of the Risk Management Committee and a member of the Governance and Nominating Committee.

13.     Defendant Lawrence A. Hough ("Hough") has served as a director of DigitalGlobe since January 2013.  According to the Company's website, Hough is a member of the Compensation Committee.

14.     Defendant Warren C. Jenson ("Jenson") has served as a director of DigitalGlobe since 2008.  According to the Company's website, Jenson is Chair of the Compensation Committee and a member of the Governance and Nominating Committee.

15.     Defendant L. Roger Mason, Jr. ("Mason") has served as a director of

DigitalGlobe since October 2015.  According to the Company's website, Mason is a member of the Risk Management Committee.

16.    Defendant Jeffrey R. Tarr ("Tarr") has served as a director of DigitalGlobe since April 2011 and is the Company's President and Chief Executive Officer ("CEO").

17.    Defendant Kimberly Till ("Till") has served as a director of DigitalGlobe since October 2010.  According to the Company's website, Till is a member of the Audit Committee and the Risk Management Committee.

18.    Defendant Eddy Zervigon ("Zervigon") has served as a director of DigitalGlobe since March 2014.  According to the Company's website, Zervigon is a member of the Audit Committee and the Compensation Committee.

19.    The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.    Defendant Parent is a corporation organized under the laws of British Columbia and a party to the Merger Agreement.

21.    Defendant SSL MDA is a Delaware corporation, a wholly owned subsidiary of Parent, and a party to the Merger Agreement.

22.    Defendant Merger Sub is a Delaware corporation, a wholly owned subsidiary of SSL MDA, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of DigitalGlobe (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of February 22, 2017, there were approximately 61,755,437 shares of DigitalGlobe common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30.     DigitalGlobe is a leading global provider of high-resolution Earth imagery, data, and analysis.

31.     Sourced from its own advanced satellite constellation and third-party providers, the Company's imagery solutions and other services provide customers with accurate and mission-critical information about the changing planet, and support a wide variety of uses, including mission-planning, mapping and analysis, environmental monitoring, oil and gas exploration, and infrastructure management.

32.     Additionally, hundreds of developers are building new applications and machine learning algorithms on DigitalGlobe's Geospatial Big Data platform and in its recently expanded services business.

33.     On February 24, 2016, DigitalGlobe issued a press release wherein it reported its financial results for the full year and fourth quarter ended December 31, 2016.  DigitalGlobe reported that U.S. Government revenue increased by 3.3% in 2016; Diversified Commercial revenue increased by 3.3%; and net income increased 13.7% to $26.5 million, or $0.34 per diluted share.  Additionally, net income margin expanded 40 bps to 3.7%; adjusted EBITDA increased 7.6% to $382.7 million; and adjusted EBITDA margin expanded 220 bps to 52.8%. With respect to the financial results, Individual Defendant Tarr commented:

> We wrapped up a solid year on a high note with our successful launch of WorldView-4 and the completion of the Radiant Group transaction[.] Our improved results reflect solid execution against our strategy for shareowner value creation and position us well for 2017. We look forward to continued profitable growth as we expand our International Defense and Intelligence business with assured access to our newest high resolution satellite, develop new commercial use cases, expand our rapidly growing geospatial big data analytics platform, and realize the full potential of our services business with the addition of Radiant.

34.     Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by MacDonald for inadequate consideration.

35.     To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor MacDonald and are calculated to unreasonably dissuade potential suitors from making competing offers.

36.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 5.3(a) of the Merger Agreement states:

(a) Except as permitted by this Section 5.3, the Company shall, and the Company shall cause its Subsidiaries and shall use its reasonable best efforts to cause its Representatives to, immediately cease, and cause to be terminated, any solicitation, encouragement, discussion or negotiation with any Persons conducted heretofore by or on behalf of the Company with respect to any actual or potential Company Acquisition Proposal, and with respect to third Persons with whom discussions or negotiations have been terminated on, prior to or subsequent to the date hereof, the Company shall request and use its commercially reasonable efforts to obtain (it being understood that such efforts shall not require the Company to engage in litigation), pursuant to its contract rights, the return or the destruction of confidential information previously furnished by the Company, its Subsidiaries or any of its or their Representatives. Except as otherwise specifically permitted by this Section 5.3, the Company shall not, and shall cause its Subsidiaries and shall use its reasonable best efforts to cause any of its or their Representatives not to, (i) initiate, solicit, knowingly facilitate or knowingly encourage (including by furnishing or providing information) any inquiries, proposals or offers with respect to, or the making of, any proposal or offer that constitutes, or could reasonably be expected to lead to a Company Acquisition Proposal; (ii) enter into, participate or engage in or continue any discussions or negotiations with any Person with respect to a Company Acquisition Proposal or any inquiry or indication of interest that could reasonably be expected to lead to a Company Acquisition Proposal; (iii) furnish or provide any non-public information regarding the Company or its Subsidiaries to any Person, or provide

7

access to any Person to the properties, assets or employees of the Company or its Subsidiaries in connection with or in response to a Company Acquisition Proposal or any inquiry or indication of interest that could reasonably be expected to Company Acquisition Proposal; (iv) approve or recommend to the Company's stockholders any Company Acquisition Proposal; or (v) approve or recommend to the Company's stockholders, or execute or enter into, any letter of intent or agreement in principal, or any other Contract contemplating or otherwise relating to a Company Acquisition Proposal (other than a Company Acceptable Confidentiality Agreement as provided in Section 5.3(b)(ii)).

37.     Further, the Company must promptly advise MacDonald of any proposals or inquiries received from other parties.  Section 5.3(d) of the Merger Agreement states:

(d) The Company shall advise Parent in writing within 24 hours of the receipt of (i) any Company Acquisition Proposal, and (ii) any request for material non-public information relating to the Company or any of its Subsidiaries made by any Person, and any inquiry or request for discussions or negotiations with the Company or any of its Representatives, in each case relating to a Company Acquisition Proposal or which could reasonably be expected to lead to a Company Acquisition Proposal.  The Company shall provide to Parent, within such 24 hour time period, the identity of each Person that makes a Company Acquisition Proposal or request and a copy of any such Company Acquisition Proposal or request (or, where no such copy is available, a description of the material terms of any such Acquisition Proposal or request).  The Company shall keep Parent informed on a reasonably prompt basis of the status of any such Company Acquisition Proposal or request (including the identity of the parties and price involved and any material change to the material terms and conditions thereof) and provide Parent as promptly as reasonably practicable, and in any event within 24 hours, with copies of all correspondence and other written material sent to or received from the party or parties making such Company Acquisition Proposal (or such party's or parties' Representatives) in connection with any such Company Acquisition Proposal or request.

38.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants MacDonald a "matching right" with respect to any "Company Superior Proposal" made to the Company.  Sections 5.3(c) of the Merger Agreement provides:

(c) Notwithstanding anything to the contrary in this Section 5.3, prior to the obtaining of the Company Stockholder Approval, the Company Board may (i) in

the case of a Company Acquisition Proposal that did not result from a material violation of Sections 5.3(a) or 5.3(b), make a Company Adverse Recommendation Change or terminate this Agreement pursuant to Section 7.1 if the Company Board shall have determined in good faith, after consultation with its outside legal counsel and independent financial advisors, that such Company Acquisition Proposal constitutes a Company Superior Proposal and the failure of the Company Board to take such action would be inconsistent with the directors' fiduciary duties under applicable Law; or (ii) in the absence of a Company Acquisition Proposal, and solely in response to a Company Intervening Event, make a Company Adverse Recommendation Change if the Company Board shall have determined in good faith, after consultation with its outside legal counsel and independent financial advisors, that the failure of the Company Board to make such Company Adverse Recommendation Change in response to such Company Intervening Event would be inconsistent with the directors' fiduciary duties under applicable Law.  The Company Board shall not make a Company Adverse Recommendation Change pursuant to Section 5.3(c)(i) or terminate this Agreement pursuant to Section 7.1(g) unless prior to taking such action (A) the Company has given Parent prior written notice (which notice shall (1) include a copy of the proposed transaction agreements with the Person making such Company Superior Proposal, (2) specify the material terms and conditions of any such Company Superior Proposal not otherwise reflected by the agreements reflected in clause (1) (including the identity of the Person making such Company Superior Proposal), and (3) inform Parent that the Company intends to take such action at the end of the Company Superior Proposal Notice Period) (such notice being referred to herein as a "Company Superior Proposal Notice"); (B) the Company has negotiated and has used its reasonable best efforts to cause its Representatives to negotiate, in good faith with Parent, to the extent Parent wishes to negotiate, during the period starting on the date Parent receives the Company Superior Proposal Notice and ending at 11:59 p.m., Eastern Time on the fourth Business Day following such receipt (such time, a "Company Superior Proposal Notice Period"), with respect to any revisions of the terms of this Agreement proposed by Parent; and (C) at the end of such Company Superior Proposal Notice Period, the Company Board shall have determined in good faith, after consultation with its outside legal counsel and independent financial advisors and taking into account any proposed binding changes to the terms and conditions of this Agreement proposed by Parent in response to such Company Acquisition Proposal, that such Company Acquisition Proposal remains a Company Superior Proposal and that the failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law.  The Parties agree that any amendment to the financial terms or other material terms of a Company Superior Proposal following the delivery of a Company Superior Proposal Notice in respect of such Company Superior Proposal shall require delivery of another Company Superior Proposal Notice and another Company Superior Proposal Notice Period in respect of such amended Company Superior Proposal, except that if the only change to the Company Superior Proposal is a change in price, then the Company Superior Proposal Notice Period shall be the greater of the

remaining time of the Company Superior Proposal Notice Period in effect prior to the delivery of such new Company Superior Proposal Notice and the period starting on the date Parent receives such new Company Superior Proposal Notice and ending at 11:59 p.m., Eastern Time on the second Business Day following such receipt. The Company Board shall not make a Company Adverse Recommendation Change pursuant to Section 5.3(c)(ii) unless prior to taking such action: (A) the Company has given Parent prior written notice (which notice shall (1) provide a detailed description of the Company Intervening Event and (2) inform Parent that the Company intends to make such Company Adverse Recommendation Change at the end of the Company Intervening Event Notice Period) (such notice being referred to herein as a "Company Intervening Event Notice"); (B) the Company has negotiated, and has used its reasonable best efforts to cause its Representatives to negotiate, in good faith with Parent, to the extent Parent wishes to negotiate, during the period starting on the date Parent receives the Company Intervening Event Notice and ending at 11:59 p.m., Eastern Time on the fourth Business Day following such receipt (such time, a "Company Intervening Event Notice Period"), with respect to any revisions to the terms of this Agreement proposed by Parent; and (C) following the end of such Company Intervening Event Notice Period, the Company Board shall have considered in good faith any changes to this Agreement proposed in writing by Parent, and shall have determined in good faith, after consultation with its outside legal counsel and independent financial advisors, that notwithstanding such proposed changes, failure to take such actions in response to a Company Intervening Event would be inconsistent with the directors' fiduciary duties under applicable Law.

39.     Further locking up control of the Company in favor of MacDonald, the Merger Agreement provides for a "termination fee" of $85 million, payable by the Company to MacDonald if the Individual Defendants cause the Company to terminate the Merger Agreement.

40.     By agreeing to the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

42.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43.     The merger consideration also fails to adequately compensate the Company's

stockholders for the significant synergies that will result from the Proposed Transaction.

44.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

45.     Meanwhile, certain of the Company's officers and directors stand to receive significant benefits as a result of the Proposed Transaction.

46.     For example, Individual Defendants Estes, Mason, and Cyprus will be appointed to Parent's board of directors following the consummation of the Proposed Transaction, as well as to Parent's Human Resources and Management Compensation Committee, Governance and Nominating Committee, and Audit Committee, respectively.

47.     Additionally, two of the Individual Defendants will be appointed to SSL MDA's board of directors.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

48.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

49.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

50.     First, the Registration Statement omits material information regarding the Company's financial projections, MacDonald's financial projections, and the financial analyses performed by the Company's financial advisors, PJT Partners LP ("PJT Partners") and Barclays Capital Inc. ("Barclays").

51.     With respect to DigitalGlobe's financial projections, the Registration Statement fails to disclose:  (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) stock based

compensation; (v) taxes; (vi) deferred revenue; (vii) deferred contract costs and other operating activities; (viii) changes in working capital; (ix) other cash flow items; (x) the net operating loss projections included in the "Scenario 1," "Scenario 2," and "Scenario 3" projections; and (xi) a reconciliation of all non-GAAP to GAAP metrics for years 2018 through 2021.

52.     With respect to MacDonald's financial projections, the Registration Statement fails to disclose: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) stock based compensation; (v) taxes; (vi) enterprise improvement costs; (vii) foreign exchange loss; (viii) executive termination settlement costs; (ix) income tax expenses; (x) changes in working capital; and (xi) other cash flow items.

53.     With respect to PJT Partners' *Discounted Cash Flow Analysis* for DigitalGlobe, the Registration Statement fails to disclose: (i) the effect of DigitalGlobe's interest on taxes paid; (ii) the ranges of terminal values of DigitalGlobe as of December 31, 2021; and (iii) PJT Partners' basis for applying perpetuity growth rates of 1.5% to 2.5%.

54.     With respect to PJT Partners' *Discounted Cash Flow Analysis* for MacDonald, the Registration Statement fails to disclose: (i) the effect of MacDonald's interest on taxes paid; (ii) the ranges of terminal values of MacDonald as of December 31, 2021; and (iii) the estimated net debt as of December 31, 2016.

55.     With respect to PJT Partners' *Discounted Equity Value Analysis* for DigitalGlobe, the Registration Statement fails to disclose: (i) the estimated net debt as of December 31, 2020; and (ii) the fully diluted number of shares of DigitalGlobe common stock estimated to be outstanding as of December 31, 2020.

56.     With respect to PJT Partners' *Discounted Equity Value Analysis* for MacDonald, the Registration Statement fails to disclose: (i) the estimated net debt; and (ii) the fully diluted

number of shares of MacDonald common shares estimated to be outstanding as of December 31, 2020.

57.     With respect to PJT Partners' *Selected Comparable Company Analyses* for DigitalGlobe and MacDonald, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed in the analyses.

58.     With respect to Barclays' *Discounted Cash Flow Analysis* for DigitalGlobe, the Registration Statement fails to disclose:  (i) the ranges of terminal values of DigitalGlobe as of December 31, 2021; (ii) Barclays' basis for applying perpetuity growth rates of 1.5% to 2.5%; (iii) the estimated net debt as of December 31, 2016; and (iv) the net operating loss projections included in the "Scenario 1" projections.

59.     With respect to Barclays' *Discounted Cash Flow Analysis* for MacDonald, the Registration Statement fails to disclose:  (i) the ranges of terminal values of MacDonald as of December 31, 2021; and (ii) the estimated net debt as of December 31, 2016.

60.     With respect to Barclays' *Selected Comparable Company Analyses* for DigitalGlobe and MacDonald, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed in the analyses.

61.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed in the analysis.

62.     Additionally, the Registration Statement fails to disclose the specific reasons PJT Partners used the Scenario 1, Scenario 2, and Scenario 3 projections and the "Synergy Projections" in connection with its financial analyses while Barclays used only the Scenario 1 projections, the Synergy Projections, and the "Standalone NOL Projections" in connection with

its financial analyses.

63.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.   Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

64.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "DigitalGlobe's Reasons for the Merger; Recommendation of the DigitalGlobe Board of Directors"; (iii) "Opinions of DigitalGlobe's Financial Advisors"; and (iv) "Certain Unaudited Prospective Financial Information Used by the DigitalGlobe Board and DigitalGlobe's Financial Advisors."

65.     Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

66.     Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future directorship and/or employment of DigitalGlobe's directors and officers, including who participated in all such communications, including the communications relating to Individual Defendants Estes', Mason's, and Cyprus's future board and committee positions.

67.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "DigitalGlobe's Reasons for the Merger; Recommendation of the DigitalGlobe Board of Directors"; and (iii) "Interests of DigitalGlobe's Directors and Executive Officers in the Merger."

69.     Third, the Registration Statement omits material information regarding potential conflicts of interest of the Company's financial advisors.

70.     For example, the Registration Statement fails to disclose: (i) whether PJT Partners has previously provided services to MacDonald and/or its affiliates, and the amount of compensation received for such services; (ii) the amount of compensation received by Barclays for the past services it provided to DigitalGlobe; and (iii) whether Barclays has previously provided services to MacDonald and/or its affiliates, and the amount of compensation received for such services.

71.     The Registration Statement further fails to disclose whether the estimated compensation of $36 million and $18 million payable to PJT Partners and Barclays, respectively, is contingent upon consummation of the Proposed Transaction.

72.     Additionally, the Registration Statement fails to disclose the Board's "other reasons for engaging Barclays" as a second financial advisor, including whether such reasons included any potential or perceived conflict of interest on the part of PJT Partners.

73.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

74.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "DigitalGlobe's Reasons for the Merger; Recommendation of the DigitalGlobe Board of Directors"; and (iii) "Opinions of DigitalGlobe's Financial Advisors."

75.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to DigitalGlobe's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and DigitalGlobe

76.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  DigitalGlobe is liable as the issuer of these statements.

78.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.   By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

79.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

80.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

81.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

82.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

83.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and MacDonald

84.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

85.     The Individual Defendants and MacDonald acted as controlling persons of DigitalGlobe within the meaning of Section 20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of DigitalGlobe and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

86.     Each of the Individual Defendants and MacDonald was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

87.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

88.     MacDonald also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

89.     By virtue of the foregoing, the Individual Defendants and MacDonald violated Section 20(a) of the 1934 Act.

90.     As set forth above, the Individual Defendants and MacDonald had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

DATE: May 3, 2017                    Respectfully submitted,

                                     */s/ Rusty E. Glenn*
                                     Rusty E. Glenn
                                     **THE SHUMAN LAW FIRM**
                                     600 17th Street, Suite 2800 South
                                     Denver, CO 80202
                                     Telephone: (303) 861-3003
                                     Facsimile: (303) 536-7849
                                     Email: rusty@shumanlawfirm.com

                                     Kip B. Shuman
                                     **THE SHUMAN LAW FIRM**
                                     Post-Montgomery Ctr.
                                     One Montgomery Street, Ste. 1800
                                     San Francisco, CA 94104
                                     Telephone: (303) 861-3003
                                     Facsimile: (303) 536-7849
                                     Email: kip@shumanlawfirm.com

*Local Counsel for Plaintiff*


**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
Jeremy J. Riley
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF

I, GEORGE ASSAD ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.     Plaintiff has reviewed the complaint and authorizes its filing.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary.  I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.     Plaintiff's purchase and sale transactions in the DigitalGlobe, Inc. (NYSE: DGI) security that is the subject of this action during the class period is/are as follows:

PURCHASES                                       SALES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 5/12/14 | 128 | $31.67 |
|  |  |  |
|  |  |  |
|  |  |  |

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.     During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of May, 2017.

George Assad
GEORGE P. ASSAD, JR